## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

DANIEL Z. JOHNSON,         )
157 Aerie Lane           )
Harpers Ferry, WV 25425  )
                         )   Civil Action No.: 1:17-cv-00974
                         )
            Plaintiff,    )
   v.                       )
                         )
LANDLORD2LANDLORD, LLC,  )
SERVE:   Ken Lemal, Owner & Founder  )
           Landlord2Landlord, LLC  )
           303 Hickory Ridge Trail, Suite 150)
           Woodstock, GA 30188  )
                         )
and                       )
                         )
E-BACKGROUNDCHECKS.COM, INC.,  )
d/b/a BACKGROUNDCHECKS.COM,  )
SERVE:   David Bartley, Reg. Agent  )
          12770 Colt Road, Suite 1200  )
          Dallas, TX 75251-1413  )
                         )
                         )
            Defendants.  )
                         )

## COMPLAINT

The Plaintiff, Daniel Zachary Johnson ("Plaintiff"), states as follows:

## INTRODUCTION

1.    This is an action for actual, statutory and punitive damages, costs and attorney's fees brought against the Defendants pursuant to 15 U.S.C. § 1681e(b) of the Fair Credit Reporting Act ("FCRA"), which requires consumer reporting agencies to use "reasonable procedures to assure maximum possible accuracy" whenever they furnish a consumer report concerning an

individual. In this instance, Defendant E-BACKGROUNDCHECKS.COM, INC., d/b/a BACKGROUNDCHECKS.COM ("BGC") furnished multiple consumer reports that contained grossly inaccurate information regarding Plaintiff including multiple convictions for rape. Even though Plaintiff did not share the same middle name, date of birth, or social security number as the convicted felons, BGC nonetheless attributed these criminal records to Plaintiff because his first and last name matched the convicted felons. BGC's overly broad matching procedures violate § 1681e(b) of the FCRA.

2.      Plaintiff was denied the opportunity to rent several apartments due to inaccurate consumer reports furnished by BGC, including a report furnished by BGC to Defendant LANDLORD2LANDLORD, LLC, ("L2L")—another consumer reporting agency who assembles and merges information contained in the databases of several sources, including BGC. Despite its *independent* obligations to comply with § 1681e(b), L2L includes whatever information it obtains from the BGC into its reports without any procedure in place to assure the maximum accuracy of the underlying date even when it is *apparent* that the information is inaccurate. L2L violated the FCRA by simply regurgitating the inaccurate information from BGC without any procedure to assure the accuracy of the information.

3.      Plaintiff also alleges that Defendants violated § 1681g of the FCRA, which requires consumer reporting agencies to provide consumers with a copy of their consumer file if they request it. Defendants omitted critical information in response to Plaintiff's request and, thus deprived Plaintiff of valuable congressionally mandated information and made it more difficult for Plaintiff to correct and prevent further dissemination of errors relating to the derogatory criminal public records erroneously attributed to him.

2

## JURISDICTION

4.      The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Venue is proper in this Court under 28 U.S.C. § 1391(b) and Local Rule 501(b)(ii) because the events described in the Complaint took place in this District and Division.

## PARTIES

5.      The Plaintiff, Daniel Zachary Johnson, is a natural person and a "consumer" as protected and governed by the FCRA.

6.      Defendant L2L is a limited liability company with a principal place of business in Georgia. L2L provides "a comprehensive database of full essential credit and criminal background information" for the purpose of furnishing consumer reports regarding potential residents and employees.[1] L2L is a self-proclaimed "better tenant credit and background reporting facility," which allows landlords to "discovery first hand not only which tenants are good and bad, but exactly how good or how bad they really are."[2] Accordingly, L2L is a consumer reporting agency as defined by § 1681a(f) of the FCRA.

7.      Defendant BGC is a Texas corporation. BGC is a "comprehensive screening service[]" with a "database of over 550 million criminal records" and "an extensive collection of public record sources" that allows it to deliver "reports to both consumers and businesses in an intuitive, user friendly format."[3] BGC strives "to collect all electronically available data from statewide repositories, including state offender registries, the departments of corrections and the

---

[1] https://www.l2l2l.com (last visited on April 8, 2017).
[2] https://www.l2l2l.com/services.aspx (last visited on April 8, 2017).
[3] https://www.backgroundchecks.com/aboutus (last visited on April 8, 2017).

administrative office of courts."[4] Accordingly, BGC is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f).

## FACTUAL ALLEGATIONS

### *Defendants Furnished Inaccurate Consumer Reports Regarding Plaintiff*

8.      In April 2015, Plaintiff applied to rent several apartments after securing new employment in Baltimore.

9.      As part of this process, Plaintiff applied to rent several apartments and spent several weeks trying to find a place to live near Baltimore.

10.      However, after viewing several properties and completing the rental applications, Plaintiff was initially denied without any explanation.

11.      For example, on or around April 4, 2015, Plaintiff applied for an apartment on Pamela Road, which was managed by Vantage Property Management.

12.      Although Plaintiff seemed like a perfect fit, Plaintiff was inexplicably denied for the apartment without any explanation.

13.      On or around April 9, 2015, Plaintiff applied for another apartment on Shana Road, which was managed by Pinnacle Property Management.

14.      Again, even though he seemed like a perfect fit, Plaintiff was denied for the apartment without any explanation from Pinnacle Property Management.

15.      Growing desperate to find a home for himself and his pregnant wife, Plaintiff applied for another apartment on April 13, 2015, and, again, he was denied.

---

[4] https://www.backgroundchecks.com/ourdata (last visited on April 8, 2017).

16.     After Plaintiff was denied for a third time, Plaintiff pressed for answers and discovered that he did not initially qualify for the apartment due a consumer report that contained grossly inaccurate information regarding Plaintiff, including multiple criminal convictions of rape.

17.     As it turns out, BGC was the original source for each of the inaccurate reports generated regarding Plaintiff.

18.     Upon information and belief, BGC sold three separate reports regarding the Plaintiff—each of these reports was then merged with additional information from another consumer reporting agency, such as L2L, who then provided the inaccurate information to directly to the management companies.

19.      This information was inaccurate—Plaintiff did not share the same name, social security number or date of birth as the "Daniel Lee Johnson" or "Daniel John Lee Johnson" listed on two records, or the same birthday or physical characteristics of the "Daniel Johnson" listed on the Wisconsin Sex Offender Registry—who was still incarcerated in April 2015.

20.     Nonetheless, this information was attributed to Plaintiff by BGC—a consumer reporting agency that specializes in the assembly of "all electronically available data from statewide repositories, including state offender registries, the departments of corrections and the administrative office of courts."[5]

21.     BGC does not merely collect public record information, but rather, it assembles, filters, and formats the information as part of the services that it provides to its customers and other consumer reporting agencies, such as L2L and Trade House Data.

---

[5] https://www.backgroundchecks.com/ourdata (last visited on April 8, 2017).

22.     BGC knows that companies like L2L and Trade House Data use BGC's reports for the purpose of establishing consumers' eligibility for housing.

23.     Nevertheless, BGC does not follow reasonable procedures to assure the maximum possible accuracy in the consumer reports it publishes, including the reports that BGC furnished to L2L and Trade House Data regarding Plaintiff.

24.     If BGC had reasonable procedures (or any procedures whatsoever), it could have easily determined that the information in Plaintiff's consumer report belonged to another person.

25.     For example, Plaintiff did not share the same name, social security number or date of birth as the "Daniel Lee Johnson" or "Daniel John Lee Johnson" listed on two of the records, or the same birthday or physical characteristics of the "Daniel Johnson" listed on the Wisconsin Sex Offender Registry—who was still incarcerated in April 2015 according to the report furnished by BGC.

26.     However, upon information and belief, despite multiple lawsuits and complaints notifying BGC of the inadequacies of its procedures, BGC continues to use lax thresholds and overly broad matching criteria to match public record data to the consumer reports that it furnishes to third parties.

27.     Similarly, despite its *independent* obligations to comply with § 1681e(b), L2L includes whatever information it obtains from the BGC into its reports without any procedure to assure the accuracy or completeness of the underlying data.

28.     It does so even when it is apparent that the information from the BGC is inaccurate.

29.     Upon information and belief, L2L assembled and merged the information from BGC into a consumer report provided to Plaintiff's landlord on or around April 9, 2015, without

6

taking any additional steps to determine the reasons for the name and date of birth variations between Plaintiff and the criminal offenders.

30.    Upon information and belief, L2L has actual knowledge of the problems associated with BGC's matching procedures, yet L2L deliberately ignores such problems because reviewing and/or cross-checking the data would reduce its "bottom line."

31.    Instead, L2L blindly regurgitates the information from BGC's database without any procedure in place to assure the maximum possible accuracy of the data.

32.    At all times relevant hereto, Defendants' conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, Defendants' conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

33.    Moreover, Defendants failed to adopt any procedures despite substantial notice from their customers and consumers regarding the inadequacies of their procedures. Federal Trade Comm., 40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary of Interpretations, July 2011, at 67 ("However, when a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.").

*Plaintiff Requests a Copy of His Credit File*

34.     On November 2, 2016, Plaintiff mailed a letter to L2L and requested a complete copy of his credit file.

35.     On November 15, 2016, L2L provided a partial response but did not provide his complete report or the reports that had been provided to third parties.

36.     On or around December 1, 2016, Plaintiff reiterated his request for a complete report, but L2L never responded to his December 1, 2016 request.

37.     On March 29, 2017, Plaintiff asked BGC for a copy of his file and the report that BGC provided to L2L.

38.     On March 29, 2017, BGC provided him with a copy of a report that was provided to Trade House Data on April 13, 2015, but not a copy of the report that was provided to L2L.

39.     As reflected by the correspondence from BGC, it provided the April 13, 2015 consumer report to Trade House Data (who furnished it to Plaintiff's potential property manager). This report contained inaccurate information purportedly related to Plaintiff, including but not limited to that Plaintiff:

- Was listed on the Washington State Sex Offender Registry;
- Was listed on the Oregon State Sex Offender Registry;
- Was listed on the Wisconsin State Sex Offender Registry;
- That he was convicted of Rape in the Third Degree on August 10, 2006 in Washington State;
- That he was convicted of Second-Degree Sexual Assault in Milwaukee, Wisconsin on January 1, 2007.
- That he had been convicted of an "UNSPECIFIED" offense requiring sex offender registration in Lane County, Oregon.
- Had been charged with Obstruction of Justice By Disguise in Bay County, Florida
- Had tattoos on his arms stating "Me Against the World"

40.     All of this information was false, grossly inaccurate, and derogatory.

8

41.     Upon information and belief, the same information was provided on another separate report to L2L, who provided this information to the property manager who denied housing to Plaintiff on or around April 9, 2015.

42.     Moreover, in their correspondence in response to Plaintiff's request for his file, both Defendants falsely misrepresented and omitted all of the source(s) of the inaccurate criminal public record information in Plaintiff's file.

43.     Instead of clearly and accurately identifying all sources, Defendant's consumer disclosure indicated "Wisconsin Sex Offender Registry," "Oregon Sex Offender Registry," Washington Sex Offender Registry," and "Bay County."

44.     Defendant's identification of the records but not the third party providing the records created a misleading and confusion impression regarding the sources of information.

45.     At a minimum, each of these entities should have been disclosed to Plaintiff. *Dreher v. Experian Info. Sols., Inc.*, 2013 WL 2389878, at *5 (E.D. Va. May 30, 2013) ("Whatever else it might mean, the term 'sources of the information' certainly includes the entity that gave the information to [the consumer reporting agency.]").

46.     Rather than providing all of the information in the consumer's file, including the sources of the information, Defendants broadly and ambiguously disclose the jurisdiction even though Defendants possessed additional and more specific information regarding the government agency who furnished it with the underlying documents.

47.     On April 5, 2017, Plaintiff again requested that BGC provide a copy of all reports it provided to him about anyone, but BGC did not respond to his request.

48.     When Plaintiff called and queried about the status of his request the next day, he

was advised that BGC "did not keep" reports it provided to third parties and that their system only consisted of an "accessible database" that did not archive reports—notwithstanding the fact that 7 days earlier BGC had previously produced a report from April 13, 2015.

## COUNT I - FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)

49.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

50.     As explained above, Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiff.

51.     As a result of Defendants' conduct, Plaintiff suffered actual damages including but not limited to: denial of an ideal home for Plaintiff and his family, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

52.     Defendants' violation of 15 U.S.C. § 1681e(b) was willful, rendering them liable pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

53.     Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from the Defendants in an amount to be determined pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT TWO: FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681g

54.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

55.     Defendants violated 15 U.S.C. §1681g by failing to clearly and accurately disclose to all of the information in Plaintiff's file, including the sources of the information.

56.     Defendants' conduct deprived Plaintiff of valuable congressionally mandated information and made it more difficult for Plaintiff to correct and prevent further dissemination of errors relating to the derogatory criminal public records erroneously attributed to him.

57.     As a result of Defendants' conduct, Plaintiff suffered actual damages including but not limited to: anxiety and embarrassment.

58.     Defendants' violation of 15 U.S.C. § 1681g was willful, rendering them liable pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

59.     Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,
**DANIEL Z. JOHNSON**

By:_____*/s/ Kristi C. Kelly*_____
Counsel

Kristi Cahoon Kelly (No. 07244)
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202

11

Fairfax, VA 22030
Telephone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com

Scott A. Surovell, Esq. (*to be admitted*)
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
Telephone: 703.277.9750
Facsimile: 703.591.9285
Email: ssurovell@siplfirm.com

*Counsel for Plaintiff*